FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

2019 SEP 13 P 3: 45

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | CLERK ... ... ... |
| ex rel.; | : | ... ..., VIRGINIA |
| | : | |
| **ROBERT C. SEARLE** | : | Civil Action No. 1:19-CV-01188 (LO/MSN) |
| 533 GRAHAM RD. | : | |
| LEESVILLE, LA 71446 | : | **FILED UNDER SEAL:** |
| | : | |
| Plaintiffs, | : | **PURSUANT TO** |
| | : | **31 U.S.C. § 3730(b)(2)** |
| v. | : | |
| | : | |
| **VSE Corporation** | : | **DO NOT PLACE IN PRESS BOX** |
| 6348 WALKER LANE | : | |
| ALEXANDRIA, VA 22310-3226 | : | |

## FALSE CLAIMS ACT COMPLAINT AND DEMAND FOR JURY TRIAL

### Introduction

1. Mr. Robert C. Searle (the "relator") brings this action on behalf of the United States of America against defendant for treble damages and civil penalties arising from the defendant's false statements and false claims in violation of the Civil False Claims Act, 31 U.S.C. §§ 3729 et seq.

2. Defendant made false statements as to the completeness and accuracy of the performance of the contract knowing the work product was not compliant with the Performance Work Statement.

3. The violations arise out of false certifications from Defendant to the Government in order to receive funds pursuant to a contract.

4. As required by the False Claims Act, 31 U.S.C. § 3730(b)(2), the relator has provided to the Attorney General of the United States and to the United States Attorney for the Eastern District of Virginia a statement of all material evidence and information related to the complaint. This disclosure statement included material evidence known to relator at his filing establishing the

existence of defendant's false claims. Because the statement includes attorney-client communications and work product of relator's attorneys, and submitted to the Attorney General and to the United States Attorney in their capacity as potential co-counsel in the litigation, the relator understands this disclosure to be confidential.

### Jurisdiction and Venue

5. This action arises under the False Claims Act, 31 U.S.C. §§ 3729 et seq. This Court has jurisdiction over this case pursuant to 31 U.S.C. §§ 3732(a) and 3730(b). This court also has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1345.

6. Venue is proper in this District pursuant to 31 U.S.C. § 3732(a), because defendant VSE Corporation is headquartered in Alexandria, VA.

### Parties

7. Relator Robert Searle is a citizen of the United States and a resident of the State of Louisiana. The relator brings this action based on his direct, independent, and personal knowledge as well as information and belief.

8. Relator is an original source of this information to the United States. He based the allegations on information that he has direct and independent knowledge of and has voluntarily provided the information to the Government before filing an action under the False Claims Act, based on the information.

9. The United States of America purchases integrated logistical services through Department of the Army's Tank Automotive Armaments Command (TACOM) to support the

2

Army's equipment.  These services include producing operator, maintenance, and parts manuals. TACOM contracts with vendors to produce these manuals.

10. Defendant VSE Corporation is a corporation headquartered and domiciled at: 6348 Walker Lane, Alexandria, VA 22310.

### Facts and Findings, Facts Applicable to All Claims

11. On or about 15 Sep 2011, Department of the Army Contracting Command, TACOM, Warren, MI awarded VSE Corporation contract W56HZV-09-A-A906 delivery/task order 0004[1] (W56HZV-09-A-A906 P0004).  The object of the contract was to update technical manuals to the Army's two-level maintenance program, as well as incorporating equipment changes and corrections.

12. The Government has committed $17,811,936.00[2] to Contract W56HZV-09-A-A906 P0004 ((Task Order 0004) hereinafter TO 4).

13. TO 4 (C.1.2)[3] required Defendant update the technical manuals to reflect accurate and current information in conformity to Army two-level maintenance described in Army Regulation (AR) 750-1[4] and Military Standard (MIL STD) 40051-2 w/Change 3[5] to wit:

> "C.1.2 The Contractor shall provide Logistics Support and Logistic Support documentation for the TACOM LCMC Publications listed in Appendix A hereof. Logistics support shall consist of Integrated Logistics Support (ILS) planning, Technical Documentation and technical support (parts provisioning data). For the work called for under this PWS, the contractor shall assume all equipment publications identified in Appendix A will have all content revised in accordance with Two Level Maintenance constraints (as described in AR 750-1 and MIL-STD-40051-2, Change 3). The objectives of this Task Order is for the contractor

---

[1] Exhibit 1 W56HZV-09-A-A906 P0004 Order for Supplies and Services
[2] Exhibit 1 W56HZV-09-A-A906 P0004 narrative A0001 4. (pg 3)
[3] Exhibit 1 W56HZV-09-A-A906 P0004 narrative (pg 13)
[4] Exhibit 2 AR 750-1 Army Material Maintenance
[5] Exhibit 3 MIL STD 40051-2 w/Change 3

to prepare and deliver Field Level and Sustainment Level publications **which in most cases will result in complete revisions of the current fielded publication available within the Logistics Information Warehouse.**" (Emphasis ours)

14. The TO 4 Performance Work Statement (PWS) refers to its Appendix A[6], a list of models/publications for upgrade to two level maintenance publications.

15. Among the models and publications are TM 9-2320-272-24P-1 & -2 consisting of 2,100 total pages:

| Pages | Model | Publication |
|---|---|---|
| 963 | "Truck Cargo: Drop Side 5 Ton 6x6 W0/W M923 | TM 9-2320-272-24P-1 |
| 1137" | Truck Cargo: Drop Side 5 Ton 6x6 W0/W M923 | TM 9-2320-272-24P-2 |

(Extracted from TO 4 Appendix A)

16. TO 4 performance work statement (PWS) states the work product including any Repair Parts Special Tool List (RPSTL) will conform to AR 750-1 and MIL STD 40051-2 w/Change 3.

C.1.1 "a. The Integrated Logistics Support (ILS) Program includes the necessary analysis, provisioning, technical manuals, and all documentation requirements that allow the Technical Manuals to support the listed equipment in Appendix A; and their corresponding end Items to operate in a two-level maintenance environment (as defined in AR-750-1 and the Army Campaign Plan) worldwide in all weather conditions."[7]

"C.1.2 The Contractor shall provide Logistics Support and Logistic Support documentation for the TACOM LCMC Publications listed in Appendix A hereof. Logistics support shall consist of Integrated Logistics Support (ILS) planning, Technical Documentation and technical support (parts provisioning data). For the work called for under this PWS, the contractor shall assume all equipment publications identified in Appendix A will have all content revised in accordance with Two Level Maintenance constraints (as described in AR 750-1 and MIL-STD-40051-2, Change 3). The objectives of this Task Order is for the contractor to prepare and deliver Field Level and Sustainment Level publications which in most cases will result in complete revisions of the current fielded publication available within the Logistics Information Warehouse."[8]

---

[6] Exhibit 4 W56HZV-09-A-A906 P0004 Appendix A List of Publications
[7] Exhibit 1 W56HZV-09-A-A906 P0004 C.1.1a (pg 13)
[8] Exhibit 1 W56HZV-09-A-A906 P0004 C.1.2 (pg 13)

C.4.5"b. The Contractor shall include maintenance levels from Field through Sustainment Levels of Maintenance, including the Repair Parts and Special Tool List (RPSTL), Preventive Maintenance Checks and Services (PMCS), and a Maintenance Allocation Chart (MAC) format to 2-Level Maintenance mandate and in accordance with MIL-STD-40051." [9]

17. The Government provides all technical data including the latest information to the Defendant to create the parts manual known as Repair Parts and Special Tools List (hereinafter RPSTL).

18. Defendant commenced work updating the M939 series 5-Ton truck RPSTL (listed in paragraph 15).

19. The M939 series 5-Ton truck has 30 models and variants, each with unique parts and features requiring distinction in a RPSTL.

20. The Army has a "Usable on Code" (hereinafter UOC) distinguishing the differences in models and variants listed in the front of each RPSTL requiring different quantities or parts.

21. Each RPSTL has a verbatim instruction set, required by MIL STD 40051-2 w/Change 3 F.5.3.5.3 which instructs RPSTL users on the use of UOC and its unique designation. [10]

22. Included in these required user instructions, F.5.3.5.3, is a statement clarifying the use of UOC, which leaves no doubt that if an item applies to all variants in the same quantity, *no UOC will be listed*:

"Uncoded items are applicable to all models." [11]

23. MIL STD 40051-2 w/Change 3 F.5.3.6.3.2.6d contains instructions on the use of UOC, to wit:

---

[9] Exhibit 1 W56HZV-09-A-A906 P0004 C.4.5 b (pg 17)
[10] Exhibit 3 MIL STD 40051-2 w/change 3 Appendix F, (par F.5.3.5.3, pgs 330-338)
[11] Exhibit 3 MIL STD 40051-2 w/change 3 Appendix F (par F.5.3.5.3A, pg 334)

"When an item is used on all configurations or when only one configuration is covered by the RPSTL, *UOCs shall not be shown*."[12] (Emphasis ours)

24. Defendant presented the suite of M939 5-Ton Technical Manuals to the Government and submitted their claims for payment.

25. The finished work product, published at the LOGSA (Logistics Support Activity) website (a site accessible to Armed Services personnel) included the M939 5-Ton RPSTL series in the form of TM 9-2320-272-24P-1, TM 9-2320-272-24P-2, and TM 9-2320-272-24P-3 totaling 3576 pages (a 70% increase over the 2100 pages listed in Paragraph 15).

26. Defendant added and included *all 30 UOCs for each item* – when they needed no distinction.

27. The UOCs for TM 9-2320-272-24P 1thru 3 are:

| Code | Used On | Code | Used On | Code | Used On |
|---|---|---|---|---|---|
| 1. DAC | M927A1 WO/W | 11. V14 | M925 W/W | 21. ZAA | M923A2 WO/W |
| 2. DAD | M928A1 W/W | 12. V15 | M923 WO/W | 22. ZAB | M925A2 W/W |
| 3. DAE | M929A1 WO/W | 13. V16 | M928 W/W | 23. ZAC | M927A2 WO/W |
| 4. DAF | M930A1 W/W | 14. V17 | M927 WO/W | 24. ZAD | M928A2 W/W |
| 5. DAG | M931A1 WO/W | 15. V18 | M936 W/W | 25. ZAE | M929A2 WO/W |
| 6. DAH | M932A1 W/W | 16. V19 | M930 W/W | 26. ZAF | M930A2 W/W |
| 7. DAJ | M934A1 WO/W | 17. V20 | M929 WO/W | 27. ZAG | M931A2 WO/W |
| 8. DAL | M936A1 W/W | 18. V21 | M932 W/W | 28. ZAH | M932A2 W/W |
| 9. DAW | M923A1 WO/W | 19. V22 | M931 WO/W | 29. ZAJ | M934A2 WO/W |
| 10. DAX | M925A1 W/W | 20. V24 | M934 WO/W | 30. ZAL | M936A2 W/W |

---

[12] Exhibit 3 MIL STD 40051-2 w/change 3 Appendix F (par F.5.3.6.3.2.6d., pg 347)

28. Defendant, having included all 30 UOCs, along with the updated requirements, expanded the size of the RPSTL *an additional six lines each time they listed all 30 UOCs unnecessarily*.

29. Defendant having included all 30 UOCs assured each item instead of using one to two lines, used from six to eight lines enumerated in each volume of the M939 RPSTL series as listed:

    a.    TM 9-2320-272-24P-1: 1899 violations
    b.    TM 9-2320-272-24P-2: 1002 violations
    c.    TM 9-2320-272-24P-3:  260 violations
          Total:             3161 violations.

30. Each use of all 30 UOCs *prohibited by* MIL STD 40051-2 w/Change 3 as cited in the PWS is an individual claim under the False Claim Act, 31 U.S.C. §§ 3729 et seq.

31. Defendant listed an additional thirty UOCs in RPSTL introduction in their publication TM 9-2320-272-24P-1. These UOCs were legacy from the old manuals and not updated.

32. Defendant added 19 additional UOCs not covered by RPSTL series in their produced manuals TM 9-2320-272-24P-1, -2, &-3: These are:

"DAA, DAB, DAK, DAM, DAN, DAP, DAQ, DAR, V06, V07, V12, V13, V25, V39, ZAK, ZAM, ZAN, ZAP, ZAQ"

33. Defendant listed only thirty UOCs in RPSTL introduction in their publication TM 9-2320-272-24P-1, -2 and -3.

34. Defendant created RPSTL Figure 68 in TM 9-2320-272-24P-1 entitled:

"Figure 68. Fuel Tank Mounting, Single Tank, RH."

35. Figure 68 lists 12 separate parts all having one UOC: V39.

36. UOC V39 is not listed in the 30 UOCs the TM series for the M939 series five ton.

7

37. Defendant created RPSTL Figure 73 in TM 9-2320-272-24P-1 entitled:

"Figure 73. Fuel Tank Vent Lines, Single, RH."

38. Figure 73 lists seven (7) separate parts all having one UOC: ZAP. UOC ZAP is not listed in the 30 UOCs the TM series for the M939 series five ton.

39. Defendant created RPSTL Figure 169 in TM 9-2320-272-24P-1 entitled:

"Figure 169. Rear Wiring Harness Assembly, Chassis. (Sheet 1 of 2)" and
"Figure 169. Rear Wiring Harness Assembly, Chassis. (Sheet 2 of 2)"

40. Figure 169 lists 42 separate parts all having one UOC: V39.

41. UOC V39 is not listed in the 30 UOCs the TM series for the M939 series five ton.

42. Defendant created RPSTL work package WP0347 in TM 9-2320-272-24P-2 entitled:

"FRAME ASSEMBLY, CHASSIS (M939)"

43. WP 0347 contains Figure 346 entitled:

"Figure 346. Frame Assembly, Chassis (M939)."

44. Figure 346 lists 52 separate parts all having one UOC: V39.

45. UOC V39 is not listed in the 30 UOCs the TM series for the M939 series five ton.

46. MIL STD 40051-2 W/Change 3 requires figure numbers assigned by Defendant be unique:

"4.7.27.4.6 Illustration identification numbers. Each illustration shall be assigned a unique identification number provided by the proponent activity."

47. Defendant created TM 9-2320-272-24P-3 included RPSTL figure 666.

48. Figure 666 has a Defendant provided unique identification number R0687DAA.

49. Defendant created TM 9-2320-272-24P-3 included RPSTL figure 669.

50. Figure 669 has identification number R0687DAA, exact duplication of Figure 666 (Para. 56).

51. Defendant correctly listed 20 parts for Figure 666 using applicable UOCs.

52. Defendant listed NSN (National Stock Number) and Part numbers for 20 parts in Figure 669, identical to Figure 666 but assigned different UOCs, including UOCs not covered by the UOC listing.

53. Defendant created TM 9-2320-272-24P-3 included RPSTL figure 667.

54. Figure 667 has a Defendant provided unique identification number R0688DAA.

55. Defendant created TM 9-2320-272-24P-3 included RPSTL figure 668.

56. Figure 668 has identification number R0688DAA, exact duplication of Figure 667 (Para. 53).

57. Defendant created TM 9-2320-272-24P-3 included RPSTL figure 670.

58. Figure 670 has identification number R0688DAA, exact duplication of Figure 667 (Para. 53).

59. Defendant correctly listed 6 parts for Figure 667 using applicable UOCs.

60. Defendant listed identical NSN and Part numbers for 6 parts in Figure 668 then assigned different UOCs, including UOCs not covered by the UOC listing.

61. Defendant listed identical NSN and Part numbers for 6 parts in Figure 670 then assigned different UOCs, including UOCs not covered by the UOC listing.

62. Defendant produced TM 9-2330-205-13&P.

63. Provisioning is defined by the Army in Army Regulation 700-18[13] (Provisioning of U.S. Army Equipment) as cited in Army Regulation 750-1:

---

[13] Exhibit 5 AR 700-18

"Provisioning:
A management process for determining and acquiring the range and quantity of support items necessary to operate and maintain an end item of materiel for an initial period of service. Specific types of provisioning are as follows: Initial provisioning: first-time provisioning of a new end item; follow-on provisioning: subsequent provisioning of the same end item from the same contractor; reprovisioning: subsequent provisioning of the same end item from a different contractor."

64. The RPSTL portion of TM 9-2330-205-13&P lists parts by NSN that do not exist.

65. TO 4 clearly states the provisioning:

"C.1.1 Provisioning Program The contractor shall update the existing government furnished PMR's containing the Provisioning Contract Control Numbers (PCCN) and Provisioning Control Codes (PCC)/Use on Codes (UOC) as Listed on Appendix A."[14] (PMR=Provisioning Master Record)

66. TM 9-2330-205-13&P shows Work Package WP 0091 (RPSTL figures and listings)

Figure 4. Axle Assembly Item 2:

"2 PAFZZ 0000-00-000-0000 19207 7263711-ABS AXLE ASSEMBLY, ABS COMPLETE.......... 1"

67. NSN 0000-00-000-0000 is not a valid NSN.

68. NSN 0000-00-000-0000 is listed 30 separate times in RPSTL Figures 4, 5, 10, 11, 12, 14, 16, 17, 20, 21, and 23.

69. Manual users in the field cannot rely on the information provided the published manual because parts were not properly provisioned with current information.

70. TO 4 states the provisioning information be updated:

"C.1.1 Provisioning Program The contractor shall update the existing government furnished PMR's containing the Provisioning Contract Control Numbers (PCCN) and Provisioning Control Codes (PCC)/Use on Codes (UOC) as Listed on Appendix A."[15] (PMR=Provisioning Master Record)

---

[14] Exhibit 1 W56HZV-09-A-A906 Task Order 4 Performance Work Statement (pgs 28&29)
[15] Exhibit 1 W56HZV-09-A-A906 P0004

71. TO 4 also indicates "Field Level and Sustainment Level" distinctly:

"C.1.2 The Contractor shall provide Logistics Support and Logistic Support documentation for the TACOM LCMC Publications listed in Appendix A hereof. Logistics support shall consist of Integrated Logistics Support (ILS) planning, Technical Documentation and technical support (parts provisioning data). For the work called for under this PWS, the contractor shall assume all equipment publications identified in Appendix A will have all content revised in accordance with Two Level Maintenance constraints (as described in AR 750-1 and MIL-STD-40051-2, Change 3). The objectives of this Task Order is for the contractor to prepare and deliver Field Level and Sustainment Level publications which in most cases will result in complete revisions of the current fielded publication available within the Logistics Information Warehouse."

72. TM 9-2320-272-23-1 published by Defendant in WP 0001 begins with:

"FIELD MAINTENANCE GENERAL INFORMATION SCOPE
This manual contains field level instructions for maintenance and troubleshooting of the 5-ton, 6x6, M939, M939A1, and M939A2 Diesel Truck Series. The vehicle is used for general cargo and troop transport, hauling and dumping, hauling semitrailers, and base station for electronics, maintenance, supply, and power, hauling semitrailers, and base station for electronics, maintenance, supply, and power."

73. TM 9-2320-272-23-1 published by Defendant in its "HOW TO USE THIS

MANUAL" section instructs users to ensure RPSTL SMR code is Field Level before

commencing replacement:

"RPSTL manual lists and authorized spares and repair parts; special tools, special Test, Measurement, and Diagnostic Equipment (TMDE); and other special support equipment required for performance of Field Maintenance on the 5-ton, 6x6, M939, M939A1, and M939A2 Diesel Truck series. It authorizes the requisitioning, issue, and disposition of spares, repair parts, and special tools as indicated by the Source, Maintenance, and Recoverability (SMR) codes."

74. TM 9-2320-272-24P-1, -2, &-3 published by Defendant contains a Supply

Maintenance and Recoverability code (SMR) code for each part listed.

75. MIL STD 40051-2 w/Change 3 provides the following definitions:
"3.131 Source, Maintenance, and Recoverability (SMR) code. The five-position code containing supply/requisitioning information, maintenance level authorization criteria, and disposition instruction. The first two positions of the SMR code determine how to get an item. The third position represents who can install, replace, or use the item. The fourth position dictates who can do complete repair on the item. The fifth position represents who determines disposition action on unserviceable items."

"3.126 Replace. To remove an unserviceable spare or repair part and install a serviceable counterpart in its place. Replace is authorized by the LMI/MAC and the assigned maintenance level is shown as the third position code of the SMR code." (LMI/MAC=Logistics Management Information/Maintenance Allocation Chart)

"3.123 Repair. The application of maintenance services (inspect, test, service, adjust, align, calibrate, and/or replace), including fault location/troubleshooting, removal/installation, and disassembly/assembly procedures, and maintenance actions to identify troubles and restore serviceability to an item by correcting specific damage, fault, malfunction, or failure in a part, subassembly, module (component or assembly), end item, or system. Repair is authorized by the LMI/MAC and the assigned maintenance level is shown as the fourth position code of the SMR code."

76. The two SMR Maintenance codes used in TM 9-2320-272-24P-1, -2, &-3 are:

F- Field Level Maintenance
H- Sustainment Level Maintenance

77. All parts replaced in the Field Maintenance manual TM 9-2320-272-23-1, -2, -3, -4, & -5 must be SMR third position coded "F" in the RPSTL.

78. TO 4 requires adherence to MIL STD 40051-2 w/Change 3 and AR 750-1, which prohibit all parts with third position SMR code "H" being repaired or replaced at the Field Maintenance level.

79. TM 9-2320-272-23 volumes 1-5 must not include third position SMR code "H" parts.

80. Defendant produced TM 9-2320-272-23-5 MPRL which included item 7:

"MRPL Item 7, PN: 2957, Cage: 14153, NSN: 5330-01-413-8543, Nomenclature: Gasket, Quantity: A/R"

81. Defendant produced RPSTL TM 9-2320-272-24P 1-3 showing:

RPSTL Volume 1, Figure: 234, Item: 34, SMR code: PAHZZ, NSN: 5330-01-413-8543, Cage code: 14153, Part Number: 02957, Nomenclature: GASKET,COVER

RPSTL Volume 1, Figure: 241, Item:34, SMR code: PAHZZ, NSN: 5330-01-413-8543, Cage code: 14153, Part Number: 02957, Nomenclature: GASKET,COVER

82. Included in Defendant submitted TM 9-2320-272-23-3 is WP 0407 Front

Differential Oil Seal Replacement, which lists in Initial Setup, Material/Parts:

"Gasket (Volume 5, WP 0827, Table 1, Item 7) Qty: 1"

83. Defendant, by submitting each work package, RPSTL figure, RPSTL parts listing,

and MRPL, validated accuracy of all information presented in their work product as TO 4

requires:

"C.5 Validation. The Contractor shall physically validate 100% of all NEW procedures in the Technical Manual(s) being procured under this task order. Method of validation shall be at the Contractors discretion; however, validation methodology shall be sufficient to detect and correct all technical inaccuracies within the materials being procured under this task order. The Government reserves the right to witness any or all of the contractors validation process."[16]

84. MRPL (TM 9-2320-272-23-5, WP 0827) has 28 items with third position coded "H"

in RPSTL series (TM 9-2320-272-24P-1, -2, & -3). These MRPL items are 6, 7, 10, 12, 15, 16,

19, 23, 86, 87, 101, 105, 116, 166, 179, 181, 182, 190, 197, 201, 212, 235, 252, 263, 305, 306,

309, and 310.

85. TO 4 required Defendant to "revise" all procedures to conform to the Army two-

level maintenance concept in accordance with AR 750-1 and MIL STD 40051-2.

86. MIL STD 40051-2 defines "revision" as follows:

"3.127 Revision. A revision is comprised of corrected, updated, or additional pages or work packages to the current edition of a manual. It consists of replacement work packages

---

[16] Exhibit 1 W56HZV-09-A-A906 P0004

that contain new or updated technical information, or improves, clarifies or corrects existing information in the current edition of the manual."

87. TO 4 states each manual would "in most cases" result in complete revision.

88. TO 4 requires 23 series Field Maintenance manuals reflect tasks that are appropriate, adequate and are validated for technical accuracy and applicable to Field level of maintenance.

89. Defendant produced TM 9-2320-272-23-1, 2, 3, 4 and 5, validated all technical data accuracy and conformance to MIL STD 40051-2 and AR 750-1 as stated in TO 4.

90. Maintenance level addressed in TM 9-2320-272-23-1 through 5 is Field Maintenance level.

91. Defendant created TM 9-2320-272-23-3 and included in Work Package WP 0374 entitled "Transmission Oil Pressure Testing".

92.   WP 0374 lists the following four unidentified parts with no references for procurement:

"1/4-18 NPTF Tap", "Drill Press", "Pipe Plug" and "Two Pipe Plugs"

93. WP 0374 lists

"Pressure Checking K (Volume 5, WP 0826, Table 1, Item 40)" which in WP 0826, Table 1, Item 40 lists: Item 40, "Item name: Pressure Checking K, National Stock Number: 4910-00-792-8304, Part number /Cagec: 3005456 61465, Reference: Special Tool".

94. This pressure gauge is no longer used at Field Maintenance.

95. WP 0374 "Transmission Oil Cooler Pressure Test" with 30 steps include drilling and tapping into vehicular fittings with the expectation of not damaging the fittings.

96. Field Maintenance would not conduct this test.

97. WP 0374 "Main Pressure and Governor Pressure Test" with 33 steps outside the scope of Field Maintenance. An example of which is shown by step 14, to wit:

"14. Operate engine at 1,200 ± 25 rpm and note pressure reading on pressure gauge (Figure 6, Item 3). If pressure is not 180 to 205 psi (1,241 to 1,413 kPa), repair transmission (Figure 6, Item 1) as necessary."

98. The "repair transmission" instruction is not authorized for Field Maintenance.

99. WP 0374 "Automatic Shift Speed Test" step 4 includes the instruction to "repair transmission as necessary."

100. This instruction is outside the scope of Field Maintenance.

101. WP 0374 "Adjustment" step 15.b includes the instruction to "repair transmission as necessary."

102. This instruction is outside the scope of Field Maintenance.

103. WP 0374 "Adjustment" step 17 includes the instruction to "repair transmission torque converter."

104. This instruction is outside the scope of Field Maintenance.

105. Defendant did not validate this work package as required, as there is no reference to this work package in the Maintenance Allocation Chart (hereinafter MAC), or Preventive Maintenance Checks and Services (hereinafter PMCS) work packages.

106. Defendant created TM 9-2320-272-23-3 and included in Work Package WP 0412 entitled "STEERING KNUCKLE REPAIR".

107. Defendant did not validate this work package as required, as there is no reference to this work package in the Maintenance Allocation Chart (hereinafter MAC), or Preventive Maintenance Checks and Services (hereinafter PMCS) work packages.

108. Defendant merely copied and pasted the instructions in WP 0412 instead of updating or revising them.

109. WP 0412 contains in Initial Setup:

"Burnisher, Injector Orifice (Volume 5, WP 0826, Table 1, Item 10)"

110. As indicated in its name, the burnisher listed is utilized for injectors not a steering knuckle.

111. Defendant did not update the manual as required in TO 4, but merely copied all information and pasted into the new format disregarding technical accuracy, whether the task is appropriate to the maintenance level and can be performed as written.

112. WP 0412 Step 3 instructs to install, Step 4 to connect a "quick-disconnect coupling" however, there is no "quick-disconnect coupling" in the initial setup as required, nor do any of the items in the initial setup include a "quick-disconnect coupling".

113. TO 4 required Defendant to "revise" all procedures to conform to the Army two-level maintenance concept in accordance with AR 750-1 and MIL STD 40051-2.

114. MIL STD 40051-2 defines "revision" as follows:

"3.127 Revision. A revision is comprised of corrected, updated, or additional pages or work packages to the current edition of a manual. It consists of replacement work packages that contain new or updated technical information, or improves, clarifies or corrects existing information in the current edition of the manual."

115. TO 4 states each manual would "in most cases" result in complete revision.

116. TO 4 requires 23 series Field Maintenance manuals reflect tasks that are appropriate, adequate and are validated for technical accuracy and applicable to Field level of maintenance.

117. Defendant produced TM 9-2320-272-23-1, 2, 3, 4 and 5, validated all technical data accuracy and conformance to MIL STD 40051-2 and AR 750-1 as stated in TO 4.

118. Maintenance level addressed in TM 9-2320-272-23-1 through 5 is Field Maintenance level.

119. Defendant created TM 9-2320-272-23-3 and included in Work Package WP 0415 entitled "FORWARD-REAR AND REAR-REAR AXLE LEAKAGE TEST".

120. Defendant did not validate this work package as required, as there is no reference to this work package in the Maintenance Allocation Chart (hereinafter MAC), or Preventive Maintenance Checks and Services (hereinafter PMCS) work packages.

121. Defendant merely copied and pasted the instructions in WP 0415 instead of updating or revising them from their original source.

122. WP 0415, Step 3 instructs to install and Step 4 to connect a "quick-disconnect coupling" however, there is no "quick-disconnect coupling" in the initial setup as required, nor do any of the items in the initial setup include a "quick-disconnect coupling". (These couplings are needed to perform this task, although outside the scope of field maintenance)

123. There are 11 steps included in WP 0415 which should not be present in this incompatible work package.

124. Defendant created TM 9-2590-527-13&P and included its RPSTL.

125. The following parts are listed in the RPSTL with the SMR replacement code was changed by Defendant to reflect replacement by Operators although Operators have neither the tools or training to replace these parts.

126. Contract lists adherence to AR 750-1 and MIL STD 40051-2 w/Change 3 explicitly in the PWS. AR 750-1 is Army Material Maintenance Policy, which plainly specifies the levels of maintenance to produce Technical Manuals, to wit:

> "1.1 Background: The services to be furnished for the required Technical Publications include *provisioning*, technical writing, illustration, content development and quality assurance. Technical Manuals (TM) shall be developed in accordance with (IAW) AR 750-1, which details the approved Two Level Maintenance (TLM*) Logistics Management Information Baseline (LMI) which the contractor shall apply when developing Technical Manuals per this performance work statement (PWS). Further, the Technical Manuals*

17

shall be written to conform to MIL-STD 40051-2 w/Change 3 requirements."[17]
(Emphasis ours)

NOTE: SMR code third position "O" is a legacy code for Organizational (Unit) maintenance under the four-level maintenance program. Third position "F" replaces "O" under two-level maintenance programs.

"GROUP 020102 POWER BOX ASSEMBLY, 13016229. FIG. 7. POWER BOX ASSEMBLY,
Item: 16 PCCZA 6140-01-446-9506 19207 6TMF/TYPEII BATTERY,STORAGE 12V 2
Item: 19 PACZZ 6160-00-932-5010 19207 10921439 RETAINER,BATTERY          1
Item: 20 PACZZ 5306-00-944-3590 19207 10921441 BOLT,HOOK                 1

GROUP 0202 MORTAR LIFT DRIVE ASSEMBLY, 13016193. FIG. 9. MORTAR LIFT DRIVE
ASSEMBLY.
Item:19 PACZZ 5306-01-562-1137 44114 13016369 BOLT,SHOULDER               2

GROUP 0203 TUBE SUPPORT ASSEMBLY, 13016222. FIG. 11. TUBE SUPPORT ASSEMBLY
Item: 17 PACZZ 5340-01-572-8822 44114 13016297 STRAP,WEBBING             1

127. These SMR codes were changed by Defendants.

128. Defendants produced the above work packages, requested payment from the government, therein making additional false claims, and were paid the $17,811,936.00 funds committed to the contract by the Government which relied upon their false claims in making said payment.

129. Modification 03 extended the period of performance to January 31, 2014, ad upon completion of work, the false invoices were submitted by Defendants and paid by the Government.

## Count I

130. Relator re-alleges and incorporates the allegations of paragraphs 1–10 as if fully set forth herein.

131. Defendant knowingly falsely represented that performed work was in accordance with the TO 4 Performance Work Statement.

---

[17] Exhibit 1 W56HZV-09-A-A906 P0004

132. Defendant purposefully added UOC information specifically prohibited by the PWS, then knowingly and falsely included this information 3161 separate and unique times.

133. This course of conduct violated the False Claims Act, 31 U.S.C. §§ 3729 et seq.

134. The U.S. Government, unaware of the falsity of the claims and/or statements, and in reliance on the accuracy thereof, paid invoices in furtherance of the TO 4 and was damaged to the extent that these funds were paid based upon defendant's false representations.

**Count II**

135. Relator re-alleges and incorporates the allegations of paragraphs 1–32 as if fully set forth herein.

136. Defendant knowingly and falsely certified UOC not used in RPSTL Figure 68 (Paragraph 35) 12 violations. UOC V39 is not covered by the UOC listing Defendant created and did not comply with the with the PWS.

137.  Defendant knowingly and falsely certified UOC V39 in RPSTL Figure 73 (Paragraph 38) seven (7) violations. UOC V39 is not covered by the UOC listing Defendant created and did not comply with the with the PWS.

138. Defendant knowingly and falsely certified UOC V39 in RPSTL Figure 169 (Paragraph 40) 42 violations. UOC V39 is not covered by the UOC listing Defendant created and did not comply with the with the PWS.

139. Defendant knowingly and falsely certified UOC V39 in RPSTL Figure 346 (Paragraph 44) 52 violations. UOC V39 is not covered by the UOC listing Defendant created and did not comply with the with the PWS.

140. Defendant purposefully did not check the validity of UOC information, then knowingly and falsely included this information 113 separate and unique times.

141. The U.S. Government, unaware of the falsity of the claims and/or statements, and in reliance on the accuracy thereof, paid invoices in furtherance of the TO 4 and was damaged to the extent that these funds were paid based upon defendant's false representations.

### Count III

142. Relator re-alleges and incorporates the allegations of paragraphs 1–46 as if fully set forth herein.

143. Defendant knowingly and falsely certified RPSTL Figure 669 although it was a direct copy of Figure 666 except adding UOCs which are not covered in the RPSTL.

144. Defendant purposefully did not check the validity of UOC information in Figure 669, nor properly identified the graphic with a unique number, 21 violations.

145. The U.S. Government, unaware of the falsity of the claims and/or statements, and in reliance on the accuracy thereof, paid invoices in furtherance of the TO 4 and was damaged to the extent that these funds were paid based upon defendant's false representations.

### Count IV

146. Relator re-alleges and incorporates the allegations of paragraphs 1–52 as if fully set forth herein.

147. Defendant knowingly and falsely certified RPSTL Figure 668 although it was a direct copy of Figure 667 except adding UOCs which are not covered in the RPSTL.

148. Defendant purposefully did not check the validity of UOC information in Figure 668, nor properly identified the graphic with a unique number, 7 violations.

149. The U.S. Government, unaware of the falsity of the claims and/or statements, and in reliance on the accuracy thereof, paid invoices in furtherance of the TO 4 and was damaged to the extent that these funds were paid based upon defendant's false representations.

**Count V**

150. Relator re-alleges and incorporates the allegations of paragraphs 1–61 as if fully set forth herein.

151. Defendant knowingly and falsely certified TM 9-2330-205-13&P RPSTL although it listed all zeroes for National Stock Numbers for several parts.

152. Defendant purposefully did not check the validity of NSN information in the RPSTL portion of TM 9-2330-205-13&P, 30 violations.

153. The U.S. Government, unaware of the falsity of the claims and/or statements, and in reliance on the accuracy thereof, paid invoices in furtherance of the TO 4 and was damaged to the extent that these funds were paid based upon defendant's false representations.

**Count VI**

154. Relator re-alleges and incorporates the allegations of paragraphs 1–68 as if fully set forth herein.

155. Defendant knowingly and falsely certified MPL listing in TM 9-2320-272-23-5 although parts were not Field Maintenance level for replacement as listed in Defendant's RPSTL series TM 9-2320-272-24P-1, -2 and -3.

156. Defendant purposefully did not check the validity of replacement codes in MPL for TM 9-2320-272-23-1, -2, -3, -4 and -5, 28 violations.

157. The U.S. Government, unaware of the falsity of the claims and/or statements, and in reliance on the accuracy thereof, paid invoices in furtherance of the TO 4 and was damaged to the extent that these funds were paid based upon defendant's false representations.

**Count VII**

21

158. Relator re-alleges and incorporates the allegations of paragraphs 1–84 as if fully set forth herein.

159. Defendant knowingly and falsely certified TM 9-2320-272-23-3 Work Package 374 as valid although it uses tools not available to Field Maintenance and included instructions outside Field Maintenance authorizations. 78 Violations

160. The U.S. Government, unaware of the falsity of the claims and/or statements, and in reliance on the accuracy thereof, paid invoices in furtherance of the TO 4 and was damaged to the extent that these funds were paid based upon defendant's false representations.

## Count VIII

161. Relator re-alleges and incorporates the allegations of paragraphs 1–105 as if fully set forth herein.

162. Defendant knowingly and falsely certified TM 9-2320-272-23-3 Work Package 412 as valid although it uses tools not available to Field Maintenance and included instructions outside Field Maintenance authorizations. 51 Violations

163. The U.S. Government, unaware of the falsity of the claims and/or statements, and in reliance on the accuracy thereof, paid invoices in furtherance of the TO 4 and was damaged to the extent that these funds were paid based upon defendant's false representations.

## Count IX

164. Relator re-alleges and incorporates the allegations of paragraphs 1–111 as if fully set forth herein.

165. Defendant knowingly and falsely certified TM 9-2320-272-23-3 Work Package 415 as valid although it uses tools not available to Field Maintenance and included instructions outside Field Maintenance authorizations. 11 Violations

166. The U.S. Government, unaware of the falsity of the claims and/or statements, and in reliance on the accuracy thereof, paid invoices in furtherance of the TO 4 and was damaged to the extent that these funds were paid based upon defendant's false representations.

### Count X

167. Relator re-alleges and incorporates the allegations of paragraphs 1–129 as if fully set forth herein.

168. Defendant knowingly and falsely certified TM 9-2590-527-13&P as valid although it changed the SMR code for five (5) parts not available to Operator Maintenance and included instructions outside Operator Maintenance authorizations.

169. The U.S. Government, unaware of the falsity of the claims and/or statements, and in reliance on the accuracy thereof, paid invoices in furtherance of the TO 4 and was damaged to the extent that these funds were paid based upon defendant's false representations.

**WHEREFORE**, relator respectfully requests this Court to enter judgment against defendant, as follows:

(a)      That the U.S. be awarded treble the $17,811,936.00 damages sustained by the U.S. because of the false claims and fraud alleged within this Complaint, as the Civil False Claims Act, 31 U.S.C. §§ 3729 et seq. provides;

(b)      That civil penalties in the maximum amount allowed by statute be imposed for each and every false claim (3616 false claims in total) that defendant presented to the U.S. and/or its grantees;

23

(c)     That pre- and post-judgment interest be awarded, along with reasonable attorneys' fees, costs, and expenses which the relator necessarily incurred in bringing and pressing this case;

(d)     That the Court grant permanent injunctive relief to prevent any recurrence of the False Claims Act for which redress is sought in this Complaint;

(e)     That the relator be awarded the maximum amount allowed him pursuant the False Claims Act; and

(f)     That this Court award such other and further relief as it deems proper.

**DEMAND FOR JURY TRIAL**

Relator, on behalf of himself and the United States, demands a jury trial on all claims alleged herein.

Dated: 12, September, 2019

Respectfully Submitted,

**THE UNITED STATES,** *ex rel*
**ROBERT C SEARLE**

By Counsel,

**THE BROWN FIRM PLLC**

By: _____
Christopher E. Brown, Esquire
VSB No. 39852
526 King St., Suite 213
Alexandria, VA 22314
703-924-0223
Fax 703-997-2362
cbrown@brownfirmpllc.com

24